IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:18-CV-135-RJ

EDDIE HARRIS,

        Plaintiff/Claimant,

v.

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

ORDER

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-18, -20] pursuant to Fed. R. Civ. P. 12(c). Claimant Eddie Harris ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant filed an application for SSI on March 27, 2015, alleging disability beginning September 1, 2014. (R. 16, 170–77). His claim was denied initially and upon reconsideration. (R. 16, 64–85). A hearing before the Administrative Law Judge ("ALJ") was held on May 25, 2017, at which Claimant, represented by counsel; a witness; and a vocational expert ("VE") appeared and testified. (R. 16, 32–59). On November 9, 2017, the ALJ issued a decision denying Claimant's

request for benefits. (R. 13–31).

Claimant then requested a review of the ALJ's decision by the Appeals Council and submitted additional evidence as part of his request. (R. 5). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on June 18, 2018. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her

findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges the following errors: (1) the ALJ failed to adequately account for Plaintiff's documented falls and need for support while walking due to multiple sclerosis ("MS") in the residual functional capacity ("RFC"); and (2) at the time his decision was issued, the ALJ's

3

appointment did not comply with the Appointments Clause. Pl.'s Mem. [DE-19] at 10–21.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since March 27, 2015, the application date. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: back impairment affecting lower extremities, carpal tunnel syndrome ("CTS"), multiple sclerosis, and arthritis. (R. 19). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (19–20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] and that Claimant can occasionally use the upper extremity bilaterally to push and pull; can frequently use the upper extremity to finger, feel, and grasp bilaterally; can occasionally balance, climb ramps and stairs, kneel, and crouch; can occasionally use the lower extremity to operate foot and leg controls; cannot climb ladders, ropes, and scaffolds; cannot crawl; can have occasional exposure to temperature extremes, vibration, and wetness; cannot work around dangerous moving mechanical parts and unprotected heights; and cannot stand and walk on uneven terrain. (R. 20–24). In making this assessment, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of his symptoms not fully consistent

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

with the objective medical and other evidence. (R. 21). At step four, the ALJ concluded Claimant had no past relevant work. (R. 24). At step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 24–25).

## V. DISCUSSION

### A. Claimant's documented falls and need for support while walking

Claimant contends that the ALJ erred by failing to adequately account in the RFC for Claimant's documented falls and need for support while walking due to MS. Pl.'s Mem. [DE 19] at 10–14. The court disagrees.

An individual's RFC is the capacity he possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has

5

sufficiently considered the combined effects of a claimant's impairments when each is separately discussed along with a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," as well as a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

### 1. The ALJ adequately explained why he limited Claimant to occasional balancing and no standing or walking on uneven terrain.

Regarding the Claimant's falls and need for support while walking, the ALJ discussed the evidence regarding Claimant's MS and arthritis from April 2015 to October 2016. (R. 22–23). In April 2015, Claimant's coordination and balance were reported to be within normal limits. (R. 22). In June 2015, he had normal motor and sensory functioning. *Id.* However, in July 2015 he reported "falling, occasionally dropping items from his hand, and collapsing when ironing, suddenly," but did not experience vertigo or dizziness. *Id.* His coordination, balance, and gait were within normal limits. (R. 22–23). He had difficulty touching his finger to his nose, but in the course of the exam, this was resolved. (R. 23). MRI results suggested that Claimant had demyelinating plaques on his brain. *Id.* Further diagnostic testing in August 2015 showed positive oligoclonal bands, which are signs of MS. *Id.* A physical examination at this time showed that Claimant had mild unsteadiness, but that his vision, strength, and reflexes were normal. *Id.* In 2015, Claimant was diagnosed with MS and he was placed on Tecfidera. *Id.* Examinations in December 2015 revealed Claimant to

have neurological and balancing deficits. *Id.* In February 2016 and again in October 2016, Claimant was said to be "tolerating his MS medication well." *Id.* In April 2016, electrophysiological test findings were within normal limits. *Id.* In October 2016, while Claimant had slight difficulty with tandem gait, he had normal neurological functioning. *Id.* At his hearing, Claimant mentioned issues with his balance and ability to walk. (R. 21, 45–48). Claimant's wife further testified that he has difficulty standing and walking straight. (R. 21, 50).

The ALJ concluded that "with medication, the claimant's symptoms are manageable, and the claimant is able to perform sedentary work despite having arthritis and MS." (R. 21). The ALJ adequately explained that he did not include more stringent limitations for Claimant's balance because Claimant's MS was treated with medication. *See Ladda v. Berryhill*, 749 F. App'x 166, 171 (4th Cir. 2018) (holding that the "ALJ sufficiently explained how he used the evidence to reach his conclusion" when the ALJ did not limit the claimant's ability to perform light work because he found that the claimant's pain could be managed through medication.).

Claimant argues that the ALJ's decision is nonetheless unsupported by substantial evidence because the medical records show that Claimant still had problems balancing after he was diagnosed with MS and prescribed Tecfidera in July 2015. Pl.'s Mem. [DE-19] at 11–12. Specifically, Claimant notes that in August 2015, he was unsteady; in September 2015, he could not walk heel to toe; in January 2016, he had increasing problems with balance; in February 2016, he reported falling three times; in April 2016, he reported falling three times; in October 2016, he had worsening balance; and in January 2017, he reported more falls. Pl.'s Mem. [DE-19] at 12.

Contrarily, the ALJ noted that in February 2016, Claimant was tolerating his medication well; his neurological symptoms were well controlled; and he had normal gait. (R. 23, 510). Additionally, at that examination, Claimant specifically denied any recent problems with balance,

7

and he was instructed to continue Tecfidera. (R. 510). The ALJ further noted that in October 2016, Claimant was tolerating his medication well and had normal neurological functioning. (R. 23, 561).

It is not the role of the court to re-weigh the evidence. *Mastro*, 270 F.3d at 176. Claimant is correct in noting that there was evidence of difficulty balancing through January 2017; however, the ALJ discussed that evidence and ultimately limited Claimant to occasional balancing and no standing or walking on uneven terrain because he found that Claimant's MS symptoms were adequately controlled with medication. The ALJ drew an accurate and logical bridge from the evidence to his conclusion, so the ALJ did not err.

### 2. Even if the ALJ did err in failing to include a more stringent limitation for balancing, the error was harmless.

The ALJ found that Claimant can "occasionally balance" and "cannot stand or walk on uneven terrain." (R. 20). Claimant contends that those limitations do not adequately account for his falls and need for support while walking. Pl.'s Mem. [DE-19] at 10–14. However, a greater limitation regarding Claimant's balance would not have changed the outcome of the ALJ's decision because none of the three jobs offered by the VE require occasional balancing. The VE testified that Claimant could work as a charge account clerk, a document preparer, or a food and beverage order clerk. (R. 25, 55–56). None of those jobs require balancing. *See* DICOT 205.367-014, Charge Account Clerk; DICOT 249.587-018, Document Preparer; DICOT 209.567-014, Food and Beverage Order Clerk. Accordingly, even if the ALJ erred in formulating a limitation for Claimant's falls and difficulty balancing while walking, the error was harmless. *See Thomas v. Comm'r of Soc. Sec.*, No. 8:16-CV-3129-T-JSS, 2017 WL 6276589, at *4 (M.D. Fla. Dec. 11, 2017) (holding that the ALJ erred in discussing the claimant's restriction to occasional balancing, but

concluding that the error was harmless because "none of the three jobs testified to by the VE require balancing.").

## B.    Appointments Clause

Claimant contends that remand is appropriate because the ALJ's appointment did not comply with the Appointments Clause. Pl.'s Mem. [DE-19] at 14–21. The Commissioner contends Claimant's failure to challenge the ALJ's appointment during the administrative proceeding before the agency forfeited any Appointments Clause claim. Def.'s Mem. [DE-21] at 14–23.

In *Lucia v. Sec. & Exch. Comm'n*, the Supreme Court considered whether ALJs within the Securities and Exchange Commission ("SEC") were "Officers of the United States" and subject to the Appointments Clause, which requires appointment of such officers by only the President, a court of law, or a head of department. — U.S. —, 138 S. Ct. 2044, 2051 (2018) (citing Const. art. II, § 2, cl. 2). The Court decided that the ALJ was, in fact, an "officer" and that his appointment was unconstitutional because it was made by an SEC staff member rather than one of the constitutionally permissible entities. *Id.* at 2055. Finally, the court concluded that because Lucia made a timely challenge to the validity of the ALJ's appointment before the SEC and in subsequent litigation, he was entitled to a new hearing before a properly appointed official. *Id.* ("'[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief.") (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)).

Here, there is no evidence in the record that Claimant challenged the ALJ's appointment in the administrative proceeding before the SSA. Claimant raised this issue for the first time before the court, and, therefore, his challenge is untimely. *See Lucia*, 138 S. Ct. at 2055 (finding Lucia's

9

challenge was timely because he challenged the ALJ's appointment before the SEC and continued to pursue his claim in court). Many courts having considered post-*Lucia* Appointment Clause challenges to Social Security ALJ appointments have "rejected attacks on the validity of the ALJ's appointment under *Lucia* if claimant failed to make a constitutional challenge at the administrative level before the ALJ or the Appeals Council." *Nickum v. Berryhill*, No. 17-2011-SAC, 2018 WL 6436091, at *6 (D. Kan. Dec. 7, 2018) (collecting cases); *see also Edwards v. Berryhill*, No. 3:18-CV-615-JAG, 2019 WL 2619542, at *4 (E.D. Va. June 6, 2019) ("Although the Fourth Circuit has yet to directly address Appointments Clause challenges in the context of Social Security appeals, this Court has found that a plaintiff waives his or her right to raise an Appointments Clause challenge on judicial review when he or she fails to raise the issue before the ALJ.") (collecting cases); *Abbington v. Berryhill*, No. CV 1:17-00552-N, 2018 WL 6571208, at *2 (S.D. Ala. Dec. 13, 2018) ("In addressing Appointment Clause challenges to Social Security ALJs since *Lucia* was decided, numerous district courts have held that a claimant forfeits such a challenge by failing to raise it at the administrative level.") (collecting cases). Claimant's failure to timely challenge the ALJ's appointment before the SSA is a bar to this court's review of the issue on appeal from the Commissioner's decision. *See Kline v. Berryhill*, No. 3:18-CV-180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019) ("Plaintiff has waived any challenge to the ALJ's appointment by failing to raise it below"); *Meadows v. Berryhill*, No. 7:18-CV-17-BO, 2019 WL 938880, at *2 (E.D.N.C. Feb. 25, 2019) (holding that the claimant waived her Appointment Clause argument because she "failed to raise any challenge to the ALJ's appointment at any point in the administrative proceedings"); *Weatherman v. Berryhill*, No. 5:18-CV-45-MOC, 2018 WL 6492957, at *4 (W.D.N.C. Dec. 10, 2018) (finding post-*Lucia* challenge to appointment of Social Security ALJ "not to be cognizable on appeal as plaintiff did not first raise it before the Commissioner

10

administratively"); *Britt v. Berryhill*, No. 1:18-CV-30-FDW, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018) (denying motion to remand under *Lucia* on the grounds that the ALJ and the Administrative Appeals Judge presiding over his claim were not constitutionally appointed because the claimant "forfeited the issue by failing to raise it during his administrative proceedings.") (citing *Garrison v. Berryhill*, No. 1:17-CV-302-FDW, 2018 WL 4924554 (W.D.N.C. Oct. 10, 2018)). *But see Bradshaw v. Berryhill*, No. 5:18-CV-100-RN, 2019 WL 1510953, at *11 (E.D.N.C. Mar. 26, 2019); *Probst v. Berryhill*, No. 5:18-CV-130-JG, 2019 WL 1749135, at *8 (E.D.N.C. Mar. 22, 2019). Accordingly, Claimant has forfeited any challenge to the ALJ's appointment by failing to raise it below.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-18] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-20] is ALLOWED, and the final decision of the Commissioner is affirmed.

So ordered, this the 1st day of July, 2019.

Robert B. Jones, Jr.
United States Magistrate Judge